# NO. 12-18-00230-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DARREN LEE GLASPIE,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Darren Lee Glaspie appeals his conviction for felon in possession of a firearm. In two issues, Appellant argues that the trial court abused its discretion in overruling his motion to suppress and the judgment incorrectly recites the nature of his plea. We modify and affirm as modified.

## BACKGROUND

Appellant was charged by indictment with felon in possession of a firearm and pleaded "not guilty." The indictment further alleged that Appellant previously was convicted of two felonies. Appellant filed a motion to suppress, which was denied following a pretrial hearing.[1] The matter proceeded to trial, following which, a jury found Appellant "guilty" as charged. Thereafter, the jury found the two enhancement allegations in the indictment to be "true" and assessed Appellant's punishment at imprisonment for forty years. The trial court sentenced Appellant accordingly, and this appeal followed.

---

[1] The trial court made written findings of fact and conclusions of law in conjunction with its order denying Appellant's motion to suppress.

In his first issue, Appellant argues that the trial court abused its discretion by overruling his motion to suppress. Specifically, Appellant contends that the officer's initial interaction with him amounted to an investigative detention, which, because the officer lacked reasonable suspicion, was a violation of his rights under the Fourth Amendment to the United States Constitution.

## Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz*, 152 S.W .3d 72, 81 (Tex. Crim. App. 2004). Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

## Casual Encounter versus Investigative Detention

There are three distinct categories of interactions between police officers and citizens: (1) encounters; (2) investigative detentions; and (3) arrests. *Crain*, 315 S.W.3d at 49. In determining which category an interaction falls into, courts look at the totality of the circumstances. *Id.* An encounter is a consensual interaction which the citizen is free to terminate at any time. *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75 L. Ed. 2d 229 (1983)). Unlike an investigative detention and an arrest, an encounter is not considered a seizure that would trigger Fourth Amendment protection. *Crain*, 315 S.W.3d at 49. An encounter takes place when an

officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers. *Id.* (citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002)).

On the other hand, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. *Crain*, 315 S.W.3d at 49 (citing *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995)). When the court is conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required. *Crain*, 315 S.W.3d at 49. The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter. *Id.* Examples of circumstances that might indicate a seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 49–50 (citing *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980)).

In the instant case, the trial court made the following pertinent findings of fact:

> Deputy [Robert] Garcia testified at the Suppression Hearing that on August 27, 2017[,] he was patrolling the area of CR 272 and CR 219 in Smith County, Texas when he saw a subject walk from the roadway into an open field carrying items in his hand that he could not identify at the time.
>
> Deputy Garcia testified that he pulled his patrol vehicle over on the side of the road and crossed the tree line to make casual contact with the person who crossed the road.
>
> When Deputy Garcia crossed the tree line, he came to an open field where, at first, he could not see the person who had crossed the road. After looking around for a moment, he saw someone lying spread out in the tall grass trying to hide from the Deputy.
>
> Deputy Garcia asked the subject, who he later identified as Darren Glaspie in open court, to get up out of the grass where he was hiding. When the defendant got out of the grass, Deputy Garcia was able to see that the defendant had dispossessed himself of the property he was carrying across the road.
>
> Based on the defendant['s] hiding from Deputy Garcia and hi[s] having tried to hide the property he was carrying across the road, Deputy Garcia temporarily detained the defendant in handcuffs for officer safety and to investigate what the property was the defendant had dispossessed himself of.
>
> Deputy Garcia asked the defendant what his name was and why he had tried to hide from the Deputy. Deputy Garcia walked the defendant over to the brush where he had been hiding and located a Ruger 270 rifle. Deputy Garcia asked the defendant if the firearm was his and the defendant said that it was and he wasn't supposed to have it.

> Deputy Garcia detained the defendant long enough to run his information through dispatch and confirm that he was a convicted felon. At that time, the defendant was arrested for felon in possession of a firearm.

Garcia's body camera footage and his police report of the incident also were admitted into evidence for the trial court's consideration. The trial court concluded that Garcia did not violate Appellant's Fourth Amendment rights and that Appellant had abandoned the rifle.

At the hearing, Appellant argued primarily that the legality of Garcia's interactions with Appellant was questionable from the outset since Garcia only claimed to observe Appellant's walking from the rural roadway through a tree line and into a field.[2] However, Garcia was entitled to approach Appellant to engage in a casual encounter. *See Crain*, 315 S.W.3d at 49. Thus, we conclude that Garcia's initial decision to exit his vehicle and to follow Appellant into the field was not a seizure that would trigger Fourth Amendment protection. *See id.*

We next consider the nature of Garcia's encounter with Appellant in the field. When Garcia crossed the tree line and entered the field, he was unable immediately to locate Appellant. As he walked further, he spotted Appellant lying in tall grass. Garcia called to Appellant to come to him and further instructed Appellant to raise his hands above his head. When Appellant was within Garcia's reach, Garcia made physical contact with Appellant, holding his hands together behind his back while he frisked him.

Having considered Garcia's use of language and the tone of his voice, as well as his physical touching of Appellant's person, we conclude that a reasonable person in Appellant's position would believe that his compliance with Garcia's request was required. *See id.* at 49–50. Further, upon discovering a knife on Appellant's person, Garcia placed Appellant in handcuffs. At the hearing on Appellant's motion, Garcia stated unequivocally that, at that point, Appellant was "detained" and was not "free to leave." Therefore, we conclude that Garcia's encounter with Appellant in the field amounted to an investigative detention.

---

[2] On appeal, the State argues that Appellant failed to preserve error. Specifically, it argues that his motion to suppress used boilerplate language and his arguments at the hearing were limited to Garcia's initial decision to exit his patrol vehicle and interact with Appellant. Therefore, the State contends that Appellant's argument on appeal, which focuses on Garcia's interaction with Appellant in the field and whether Garcia had reasonable suspicion to perform an investigative detention, is not the same argument considered by the trial court. Based on our review of the record, we note that the trial court considered the greater scope of Garcia's interactions with Appellant as well as the evidence gathered by Garcia in conjunction therewith. Further, the trial court's findings of fact and conclusions of law demonstrate that it considered the greater scope of the encounter, including whether Garcia had reasonable suspicion to detain Appellant and whether Appellant abandoned the rifle Garcia found. Thus, based on our consideration and in the interest of justice, we conclude Appellant preserved error.

**Reasonable Suspicion**

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures at the hands of government officials. *Id.* at 52; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). For government officials to be able to conduct investigative detentions, they must have reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *see Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968). Articulable facts must amount to "more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress." *Crain*, 315 S.W.3d at 52. In deciding whether reasonable suspicion existed, we look at the facts available to the officer at the time of the detention. *Id.* at 52–53.

In the instant case, Garcia's police report and his testimony set forth that he observed Appellant carrying undetermined items in his hands and as Garcia approached he left the roadway and appeared to cross through a barbed wire fence to enter a field. At the hearing on Appellant's motion, Garcia testified that the area was known to him as an area of regular drug activity with known drug houses less than one mile therefrom. Garcia stated that he stopped his car and activated its emergency lights. Garcia further stated that when he first observed Appellant in the field, Appellant was lying flat in tall grass. Garcia testified that Appellant appeared to be hiding. According to Garcia, as Appellant approached in compliance with Garcia's instructions, he observed that Appellant no longer had any items in his hand consistent with what Garcia previously had seen.

In *Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000), the Supreme Court considered whether unprovoked flight by two persons carrying an unidentified box-like object when officers in vehicles entered a known high crime area met the test for reasonable suspicion to support an investigative detention. *See id.*, 528 U.S. at 124–25, 120 S. Ct. at 676. In so doing, the Court noted that evasion, while not indicative of wrongdoing, is "certainly suggestive of such" and officers are not required to ignore the relevant characteristics of a location in determining whether circumstances are sufficiently suspicious to warrant further investigation. *Id.*, 528 U.S. at 124, 120 S. Ct. at 676.

The facts in the case at hand bare similarity to the circumstances present in **Wardlaw**. Here, Appellant left the roadway and crossed through a tree line as Garcia approached in his patrol vehicle. Garcia described the area as having regular drug activity with known drug houses less than a mile from that location. In the video, the trial court could observe the short duration that elapsed from the time Garcia exited his vehicle and crossed the tree line into the adjoining field, during which time Appellant was able to conceal himself by lying flat in tall grass. We conclude that Appellant's attempt to conceal himself in an area known for regular criminal activity amounts to sufficient specific, articulable facts which, when combined with rational inferences from those facts, could lead Garcia to conclude that Appellant actually was, had been, or soon would be engaged in criminal activity. *See id.*, 528 U.S. at 124, 120 S. Ct. at 676; *In re C.A.N.*, No. 03-04-00519-CV, 2005 WL 1412112, at \*3–4 (Tex. App.–Austin Jun. 15, 2005, no pet.) (mem. op., not designated for publication) (officers had reasonable suspicion to detain where appellant darted behind electrical box as officers rounded corner in high crime area); *see also Gregory v. State*, 175 S.W.3d 800, 803 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd) (reasonable suspicion to detain where officer lost sight of suspects in high crime area and thought suspects trying to hide something from officer).

Immediately following Appellant's detention, Appellant informed Garcia that he did not own the land he had entered. Because Garcia previously observed Appellant carrying something, which Appellant was not holding when Garcia observed Appellant emerge from his place of hiding, Garcia's search of the area where Appellant was hiding is reasonably related in scope to the circumstances which justified the investigative detention in the first place. *See Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1879. Upon walking to the area where Appellant hid, Garcia discovered the rifle, which Appellant initially denied owning, but which Appellant almost immediately thereafter told Garcia that he was not supposed to have in his possession. *See id.*; *see also Matthews v. State*, 431 S.W.3d 596, 608–09 (Tex. Crim. App. 2014) (when defendant voluntarily abandons property, he lacks standing to contest the reasonableness of the search; voluntary abandonment occurs if (1) defendant intended to abandon property and (2) decision to abandon property was not due to police misconduct); *Armstrong v. State*, 966 S.W.2d 150, 153 (Tex. App.–Austin 1998, no pet.) (where appellant voluntarily abandoned contraband, he was not entitled to constitutional and statutory search and seizure protection because Fourth Amendment does not protect person who voluntarily abandons his property). Therefore, we conclude that Garcia's investigative detention of Appellant

6

and the evidence discovered in the scope thereof did not violate Appellant's rights pursuant to the Fourth Amendment. Thus, we hold that the trial court did not abuse its discretion by overruling Appellant's motion to suppress. Appellant's first issue is overruled.

## INCORRECT RECITAL OF PLEA IN WRITTEN JUDGMENT

In his second issue, Appellant argues that the trial court's judgment contains an incorrect recital that he pleaded "guilty" to the charged offense. An appellate court may modify a trial court's judgment to correct, among other things, clerical errors. *See Asberry v. State*, 813 S.W.2d 526, 530 (Tex. App.–Dallas 1991, pet. ref'd); *see also Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988).

In the instant case, the judgment was entered on June 6, 2018. The record reflects that Appellant pleaded "not guilty" to the charged offense and was found "guilty" of that offense by a jury. Accordingly, we conclude that the trial court's written judgment incorrectly recites Appellant's plea to the offense and should be modified. Appellant's second issue is sustained.

## CONCLUSION

We have overruled Appellant's first issue and sustained his second issue. Accordingly, we *modify* the trial court's judgment dated June 6, 2018, by deleting the recitation of Appellant's plea to the offense as "Guilty[,]" and inserting the recitation of Appellant's plea to the offense as "Not Guilty[.]" We *affirm* the trial court's judgment *as modified*.

GREG NEELEY
Justice

Opinion delivered July 10, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 10, 2019**

**NO. 12-18-00230-CR**

**DARREN LEE GLASPIE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 241-1732-17)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein, and the same being inspected, it is the opinion of the Court that the judgment of the trial court below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **modified** by deleting the recitation of Appellant's plea to the offense as "Guilty[,]" and inserting the recitation of Appellant's plea to the offense as "Not Guilty[;]" **and as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*